**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 1, 2011

Lyle W. Cayce
Clerk

No. 10-30837

MERLIN S. CAMPO

Plaintiff-Appellee

v.

ALLSTATE INSURANCE COMPANY

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-5050

Before KING, GARZA, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Allstate Insurance Company ("Allstate") appeals from the district court's judgment after a bench trial awarding damages to Plaintiff-Appellee Merlin S. Campo. In its written opinion, the district court found that Allstate's negligent misrepresentations caused Campo to fail to renew his flood insurance policy and awarded damages to Campo for the amount of insurance coverage he would have received when his house was destroyed by Hurricane Katrina had he renewed his policy. Allstate contends that the district court erred by finding that Campo

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30837

justifiably relied on any of its representations when he failed to pay the insurance premium required to reinstate his policy. We agree. Accordingly, we REVERSE and REMAND.

## I.

The facts in this case, which are largely undisputed, are more fully recounted in our previous opinion. *Campo v. Allstate Ins. Co. (Campo I)*, 562 F.3d 751 (5th Cir. 2009). We therefore only repeat the relevant facts and background here.

For over twenty years prior to August 2005, Merlin Campo held a Standard Flood Insurance Policy ("SFIP") issued by Allstate as a Write-Your-Own ("WYO") carrier participating in the National Flood Insurance Program (NFIP). On June 28, 2005, Allstate mailed Campo an expiration notice informing him that his 2004-2005 "policy will expire on August 13, 2005." The notice also instructed Campo that he could retroactively renew his policy for the 2005-2006 coverage period without a gap in coverage by paying a $1,237 premium within thirty days of the expiration date, i.e., the "grace period," which ended September 13, 2005.

Hurricane Katrina destroyed Campo's home on August 29, before the end of the "grace period" for retroactively reinstating his policy. Because of Katrina, the Federal Emergency Management Agency ("FEMA") extended the "grace period" for retroactively renewing policies like Campo's for ninety days, making the deadline for paying his premium December 12. During deposition testimony, Campo acknowledged receiving the expiration notice and that he understood his coverage had expired on August 13.

Campo filed a claim for loss under the expired policy in early September. On October 29, Allstate mailed Campo a letter stating that (1) it had concluded that the claim would reach or exceed Campo's policy limits and (2) it had requested that the NFIP issue a check to Campo for his policy limits. About a

month later, after multiple telephone conversations between Campo and Allstate representatives, Allstate issued an advance check on the policy to Campo for $2,500 to assist with living expenses. Even though Campo had multiple telephone conversations with Allstate representatives before his renewal deadline expired, neither party ever mentioned the delinquent premium payment before the end of the "grace period."

On December 12, 2005, Campo's "grace period" for retroactively renewing his policy expired without Campo paying the premium. About two weeks later, Allstate mailed Campo a letter stating that it was "unable to extend coverage or payment consideration for [Campo's] reported loss." Allstate then mailed Campo two more letters in late January 2006, confirming that it had denied Campo's claim because "no policy was in force at the time of this loss" as the policy had lapsed on August 13.

Campo filed a diversity suit in the Eastern District of Louisiana, alleging, under Louisiana law, that Allstate and its representatives made negligent misrepresentations that prevented Campo from renewing his policy. After the parties filed cross-motions for summary judgment, the district court held that Campo's claims were preempted by the federal regulations constituting the terms of the SFIP, 44 C.F.R. Pt. 61, App. A(1), promulgated under the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001 *et seq.* On appeal, we reversed, holding that because (1) Campo's policy had expired when he made his claim and (2) the SFIP provisions dealing with policy renewal did not address policy renewal with sufficient specificity to render Campo's claims handling-related, *Campo I*, 562 F.3d at 756 n.34, Campo's state law claims relate to insurance procurement. Because we then found that state law claims relating to insurance procurement are not preempted by federal law, we held that Campo's negligent misrepresentation claim could proceed in the district court. *Id.* at 758.

No. 10-30837

Accordingly, we remanded to the district court for further proceedings. *Id.* at 759.

On remand, the district court conducted a bench trial on the briefs with a stipulated record and issued a judgment in favor of Campo in the amount of $98,200, plus interest. The court held that Campo had proven all three elements of negligent misrepresentation by a preponderance of the evidence: (1) a legal duty to supply correct information, (2) breach of that duty, and (3) damages resulting from justifiable reliance on the misrepresentation. First, the court held that Allstate owed Campo a duty to provide correct information because Louisiana law imposes such a duty on insurers that agree to procure insurance to an individual. Second, the court found that Allstate had breached that duty by failing to inform Campo that the policy had lapsed and by affirmatively representing that the loss was covered without further action on Campo's part. Third, the court found that Campo's reliance on Allstate's misrepresentations was justified because Allstate could not show that "a close reading of the policy provisions would have provided any clarity to Campo" and Allstate's October letter clearly stated that Campo would receive payment under the policy. Allstate appealed.

## II.

On appeal, Allstate first argues that the district court's findings of fact were clearly erroneous, including the court's finding that Campo justifiably relied on Allstate's representations that his loss was covered under the expired SFIP policy when he failed to timely pay his premium. Allstate also argues it was unreasonable for Campo to rely on any representation that his claim would be covered under the expired policy because the terms of the SFIP clearly required that he pay a premium in order to reinstate coverage under that policy. Because we agree with Allstate that Campo was not justified in relying on any

No. 10-30837

representation made by Allstate when he failed to pay his insurance premium, we need not reach any other issues presented in this appeal.

In order for a plaintiff to establish negligent representation under Louisiana law, the plaintiff must prove three elements: "(1) a legal duty to supply correct information; (2) breach; and (3) damages resulting from justifiable reliance on the misrepresentation." *City Blueprint & Supply Co., v. Boggio*, 3 So. 3d 62, 66 (La. App. 4 Cir. 2008) (quoting *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 624 n.38 (5th Cir.1993)). The trial court held that Campo justifiably relied on Allstate's misrepresentations when he failed to pay his premium because the court found that the misrepresentations caused Campo "to believe paying his premium was unnecessary" and "assured him that he was covered under the policy without further action on his part."

Allstate argues that the district court erred by finding justifiable reliance because it was unreasonable for Campo to rely on any representation by Allstate that his loss would be covered under the expired policy when the clear terms of the policy mandated that he would not be covered unless he paid his premium. Specifically, Allstate contends that under the clear terms of the SFIP, Campo's insurance coverage had lapsed before his loss occurred and that in order to retroactively reinstate his policy to cover that loss he had to pay his premium. Campo counters that full knowledge of the policy's terms would not have provided him with any "clarity" regarding whether he could rely on Allstate's representations because the policy did not address this specific situation. Namely, relying on our earlier opinion in *Campo I*, Campo argues that the terms of the policy cannot determine whether his reliance was justifiable because the policy does not contain a "remedy" when "an insurance company acts as though it is handling a claim until the insured's grace period expires, and then, as soon, as the grace period expires, denies coverage." *Campo I*, 562 F.3d at 756 n.34.

No. 10-30837

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *One Beacon Ins. Co. v. Crowley Marine Services, Inc.*, --- F.3d ----, 2011 WL 3195292, at *2 (5th Cir. 2011) (citing *Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.*, --- F.3d at ----, 2011 WL 3195292, at *2 (citation and internal quotation marks omitted). And, to the extent the court's opinion turns on the meaning of the SFIP, the standard of review is de novo because "construction of a written instrument is normally a question of law and findings and conclusions of the trial court are not binding on the appellate court." *Rutgers, State Univ. v. Martin Woodlands Gas Co.*, 974 F.2d 659, 661 (5th Cir. 1992) (citation omitted).

Here, we hold that Campo did not justifiably rely on any representation by Allstate in failing to pay his SFIP premium because the terms of the SFIP clearly provide that Campo would be without coverage once his policy expired, unless he retroactively reinstated that coverage by timely paying his renewal premium within the "grace period." Under Louisiana law, "[i]t is well settled that it is the insured's obligation to read the policy when received, since the insured is deemed to know the policy contents." *Seruntine v. State Farm Fire and Cas. Co.*, 42 So. 3d 968 (La. 2010) (citing *Isidore Newman School v. J. Everett Eaves, Inc.*, 42 So. 3d 352, 359 (La. 2010); *City Blueprint & Supply Co.*, 3 So. 3d at 67). Accordingly, Louisiana courts have held that an insured's reliance on an insurer's alleged misrepresentation is not justifiable when the terms of the policy clearly reveal that the alleged misrepresentation was inaccurate. *See, e.g.*, *Seruntine*, 42 So. 3d at 968; *J. Everett Eaves, Inc.*, 42 So. 3d at 359; *City Blueprint & Supply Co.*, 3 So. 3d at 67 ("City Blueprint's reliance on the [insurer's alleged] statement to mean that it had flood insurance was

unreasonable in light of the fact that the policy in this case specifically contains a straightforward, uncomplicated, exclusion against damage caused by flood.").

Campo's SFIP policy clearly provided that his coverage would expire on the last day of the policy term and that Allstate "must receive the payment of the appropriate renewal premium within 30 days of the expiration date" if he wished to reinstate that policy. 44 C.F.R. Pt. 61 App. A(1), art. VII(H)(1)-(2) (2008). Further, Campo testified at his deposition that he had actual knowledge that his SFIP had expired on August 13 and that he needed to pay his premium during the "grace period" in order to reinstate his coverage. Accordingly, despite any representation by Allstate during the "grace period" that Campo's loss would be covered by his expired policy or the $2,500 advance Allstate issued to Campo on his claim, it was not reasonable for him to rely on those representations in deciding not to pay the premium required to retroactively reinstate his policy.

Campo disputes that the terms of the SFIP address this situation, citing language from our earlier opinion in *Campo I*. In *Campo I*, we found that the provisions of the SFIP dealing with renewals did not preempt Campo's state law claims because the policy "provides no remedy for the specific situation in which an insurance company acts as though it is handling a claim until the insured's grace period expires, and then, as soon as the grace period expires, denies coverage." 562 F.3d at 756 n.34. Instead, we found that "[t]he SFIP governs renewal in too general of a capacity for us to say that it specifically addresses this issue." *Id.* However, from the proposition that the SFIP's renewal provisions do not address the issues raised by this case with sufficient specificity to render Campo's state tort claims handling-related and thus preempted, it does not follow that the provisions of the SFIP fail to address the expiration and renewal of those policies with sufficient clarity to have allowed Campo to reasonably rely under Louisiana law on Allstate's representations that his claim would be covered under an expired policy. The policy and Allstate's expiration

notice expressly provided that Campo's coverage expired on August 13 and that if he wanted coverage beyond that date he had to reinstate his coverage by paying a renewal premium. Nor was there any evidence that Allstate had established a custom of accepting late SFIP renewal premium payments after the end of the "grace period," which might have justified Campo's reliance. *See Cormier v. Lone Star Life Ins. Co.*, 500 So. 2d 431, 434 (La. App. 3 Cir. 1986) ("[H]ere, however, there was a custom of accepting late premiums and the insured could reasonably believe that because of this custom, the policy would remain viable despite tardy payments."). Thus, Campo was not justified in relying on any representation by Allstate that Campo's claim would be covered under the expired policy, since Campo knew that he had not paid the premium to reinstate his coverage.

Further, it was also not reasonable for Campo to rely on Allstate's representations in concluding that his claim would be covered under his expired policy because none of Allstate's alleged misrepresentations affirmatively suggested that Campo's loss would be covered even if he failed to pay his premium during the extended "grace period." Neither party ever mentioned the delinquent premium to the other after Campo claimed a loss until Allstate's December letter denying Campo's claim. Thus, although Allstate did inform Campo that his loss would be covered by the expired policy and that it had requested that NFIP issue a check to Campo for that policy's limit, neither of these representations gave any affirmative indication that his claim would be covered even if he failed to pay a premium reinstating his coverage by the end of the "grace period." Hence, the district court's finding of justifiable reliance was clearly erroneous since it is not supported by substantial evidence, that is, it was not reasonable for Campo to rely on any representation by Allstate in failing to make his premium payment.

No. 10-30837

Finally, although we still acknowledge the perverse incentives this result might present to insurers by allowing them "to lull parties like Campo into believing that they would receive indemnity without having to submit any additional payment, thus affirmatively dissuading them from paying their delinquent premiums to reinstate expired coverage," *Campo I*, 562 F. 3d at 756, that concern is minimal here since Allstate did not stand to gain from denying Campo's claim, 44 C.F.R. Pt. 62, App. A, Art. II(C)(1), and there is no evidence that Allstate intended to lull Campo into failing to pay his premium.

For the foregoing reasons, the district court's judgment is REVERSED, and the case is REMANDED with instructions to dismiss Campo's claims with prejudice.